DECISION AND JUDGMENT ENTRY
These consolidated appeals are before the court from judgments of the Lucas County Court of Common Pleas, Domestic Relations Division, which ruled on various post-divorce motions filed by plaintiff-appellee, Jean M. Boraggina, and defendant-appellant, Nicholas V. Boraggina. From those judgments, appellant now raises the following assignments of error:
"ASSIGNMENT OF ERROR NUMBER ONE:
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DETERMINED THAT IT LACKED JURISDICTION TO CONSIDER APPELLANT'S MARCH, 1996 MOTION TO MODIFY CHILD SUPPORT AND DISMISSED THE MOTION.
"ASSIGNMENT OF ERROR NUMBER TWO:
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DISMISSED APPELLANT'S SEPTEMBER, 1996 MOTION TO MODIFY CHILD SUPPORT.
"ASSIGNMENT OF ERROR NUMBER THREE:
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT PROCEEDED ONLY ON APPELLEE'S MOTION TO SHOW CAUSE.
"ASSIGNMENT OF ERROR NUMBER FOUR:
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT AWARDED APPELLEE ATTORNEY FEES IN DISREGARD OF THE STATUTE, THE LOCAL RULE AND ESTABLISHED CRITERIA.
"ASSIGNMENT OF ERROR NUMBER FIVE:
 THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF APPELLANT WHEN IT IGNORED THE JOINT STIPULATIONS SUBMITTED BY THE PARTIES FOR THE RESOLUTION OF THEIR CONTROVERSY."
On June 23, 1995, a final judgment entry of divorce was journalized in the court below, which approved the parties' settlement agreement with respect to the parties' rights and interests arising out of and relating to the division of property, spousal support, allocation of parental rights and responsibilities with regard to the parties' five children, child support, and the payment of marital obligations and expenses of the divorce proceedings. Pursuant to that judgment entry, appellee was named the residential parent and legal custodian of all five children and appellant was granted visitation and companionship with the children in accordance with the court schedule. The judgment entry then provided as follows:
 "IT IS FURTHER ORDERED in accordance with the child support guidelines attached hereto as Exhibit D and further based upon an agreed upon income of $432,500.00 for the year 1995 and with the further stipulation that there shall be no child support modification by either party until the terms of the present contract with St. Charles expires.
 "IT IS FURTHER ORDERED that the defendant shall pay to the plaintiff the sum of Fifteen Hundred and no/100 ($1,500.00) per month per child as and for child support plus poundage of two percent (2%) payable via a wage withholding from defendant's monthly pay in the amount of Seven Thousand Five Hundred and no/100 ($7,500.00) plus two percent (2%) commencing on April 15, 1995 and the first day of each and every month thereafter.
"* * *
 "IT IS FURTHER ORDERED that the child support amount set is based on a compromised income figure by the defendant from St. Charles Hospital in the approximate [sic] of $432,500.00, and that neither party can petition the Court for any modification upward or downward of this child support order unless and until the contract that the defendant has with St. Charles Hospital expires.
"* * *
 "IT IS FURTHER ORDERED that in addition to defendant/obligor providing health insurance coverage for the children, defendant shall assume and pay all extraordinary medical, dental, optical, hospital, pharmaceutical, surgical, psychological, psychiatric and/or orthodontic bills not covered by said insurance coverage as defined by the Court's schedule which is attached hereto and incorporated herein as `Exhibit C.'" (Emphasis in original)
In addition to the child support matters, the settlement agreement divided the parties' marital property as follows. The parties' trust and retirement funds were divided equally. In addition, the parties were ordered to accept the first offer in excess of one million dollars on the marital home and the first offer in excess of $275,000 on the marital cottage. The proceeds from those sales were ordered to be divided equally between the parties.
On March 29, 1996, appellant filed a motion for modification of child support in which he asserted that there had been a change in circumstances in that his income had been drastically reduced since the time of the original divorce decree. Appellant attached to this motion a Schedule I affidavit of income. However, appellant did not indicate in the affidavit the amount or source of his income but, rather, stated that he would supplement the affidavit at the hearing. Appellant also did not explain in his motion how his income had been drastically reduced. Then, on September 4, 1996, appellant filed a second motion to reduce his child support obligations in which he asserted that as of September 1, 1996, he was terminated from his contract with St. Charles Hospital and no longer had any employment income. Appellant therefore requested that his child support obligation be reduced to $50 per week per child for a total monthly obligation of $1,075. Also at this time, appellant unilaterally reduced his child support payments to $219 per month per child, for a total monthly payment of $1,096. The record reveals that appellant's "termination" from his contract with St. Charles Hospital was actually a decision on the part of St. Charles not to renew its contract with appellant's company, Oregon Medical Services, Inc. As a result of that nonrenewal, the company that took over the emergency room operations for St. Charles Hospital purchased from appellant the non-compete clauses of the emergency room doctors that worked for appellant's company. Pursuant to this buy out, appellant received approximately one million dollars. After expenses, appellant deposited $870,000 in his trust fund. He then purchased an investment property in Florida for $275,000 and a home in Toledo, Ohio for $550,000, paying cash for both.
On February 12, 1997, appellee filed a motion to show cause, for lump sum judgment, and for attorney fees and other relief in which she alleged that appellant had reduced his child support payments without court order and had failed to pay medical bills for the children in accordance with the terms of the final divorce decree. Appellee therefore moved that appellant be held in contempt of court, that she be awarded a lump sum judgment for past due child support and medical expenses incurred on behalf of the children, and that she be awarded attorney fees and expenses of the suit.
On March 11, 1998, the trial court held a hearing on the pending motions. Prior to that hearing, appellant filed a brief in support of his motion to modify child support. In that brief, appellant made numerous assertions regarding his present income. He did not, however, file the court schedules attesting to those income figures. At the beginning of the hearing, appellee's counsel represented to the court that the appropriate court schedules had never been filed with regard to appellant's motion to modify. Upon questioning by the court, appellant's counsel admitted that he had never filed the schedules. Accordingly, the court, pursuant to local rule, dismissed appellant's motion to modify child support and proceeded on appellee's motion to show cause.
On April 9, 1998, the magistrate filed a decision that included findings of fact and conclusions of law regarding the March 11, 1998 hearing. Initially, the magistrate determined that appellant's March 29, 1996 motion to modify child support should be dismissed because at the time it was filed appellant's contract with St. Charles Hospital remained in effect and, therefore, under the terms of the judgment entry of divorce, the motion was improper. The court further dismissed appellant's motion to modify child support filed on September 4, 1996, for appellant's failure to file Schedules I and V. The court then addressed appellee's motion to show cause. In her factual findings, the magistrate determined that appellant had unilaterally reduced his child support payments at the same time that he received a substantial one-time earning. After receiving funds from that buy-out, appellant's trust account contained a balance of $1,199,128.48. Thereafter, he withdrew $9,000 each month from his trust account for his personal expenses. The magistrate further found that appellant had failed to reimburse appellee for medical expenses she paid for the children and had failed to pay outstanding medical expenses of the children. As a result, the magistrate concluded that appellant was in arrears on his child support payments by $115,335.78, owed appellee $4,317.89 as reimbursement for medical expenses paid on behalf of the children and was responsible for the outstanding medical bills of $1,319.59. Accordingly, the magistrate found appellant in contempt of court. The magistrate further ordered appellant to pay appellee's attorney fees.
On April 23, 1998, appellant filed objections to the magistrate's decision of April 9, 1998, which challenged a number of the magistrate's findings and conclusions. Appellant subsequently filed supplemental objections and a request for a hearing de novo. On July 22, 1999, the trial court filed a judgment entry on appellant's objections, finding the objections not well-taken and adopting the magistrate's decision of April 9, 1998 without modification. That order is the subject of appeal number L-99-1272 and of appellant's first, second, third and fourth assignments of error.
Subsequent to the March 11, 1998 hearing below, appellant filed a third motion to modify child support. In that motion, appellant asserted that due to the termination of his contract with St. Charles Hospital, effective September 1, 1996, he had no employment income and requested a reduction in his child support payments to $50 per week per child, for a total monthly child support obligation of $1,075. He requested that this reduction be effective September 1, 1996. Appellant further requested a modification of his health insurance responsibilities. In particular, appellant asserted that since appellee had moved to California with all five children, his annual health insurance costs have increased from $4,999.32 to $11,356.64. To this renewed motion to modify child support, appellant did attach the appropriate schedules.
On November 23, 1998, the parties filed stipulations in the court below with regard to the issues raised in appellant's third motion to modify child support. Accordingly, the motion was submitted to the court on those stipulations and the court did not hold a hearing. On July 22, 1999, the lower court filed a magistrate's decision with permanent order which ruled on appellant's motion to modify. In particular, the court recognized that the parties had filed stipulations but then made further findings which included findings made in the court's April 9, 1998 decision. The court then reached a number of conclusions relative to a recalculation of appellant's child support obligation. First, the court determined that although appellant was not voluntarily unemployed, he did intentionally permit his board certification in emergency medicine to expire, thereby preventing him from gaining employment in his field of education and experience which would have provided the basis of support for his children. The court then determined that appellant's income, for purposes of determining child support, should include the assets in appellant's trust account. Because appellant had annual expenses of $190,728 in 1998 and made monthly child support payments of $7,000 in 1998, the court determined that these amounts should be included in calculating appellant's income. The court then further determined that because the one million dollars that appellant received for the buy-out of his business could have been invested in income producing assets, the statutory interest rate of ten percent of that amount should be imputed to appellant as potential income. Accordingly, the court determined that appellant had gross annual income for child support calculation purposes of $374,728. In calculating appellant's child support based on this figure, and on appellee's annual income of $109,060, the court determined that appellant should pay child support of $1,205.96 per child per month, effective March 13, 1998.
Subsequently, appellant filed objections to the magistrate's decision of July 22, 1999. On November 22, 1999, the trial court filed a judgment entry on objections in which the court rejected appellant's objections and adopted the magistrate's decision with permanent order of July 22, 1999, without modification. That is the judgment which is the subject of appeal number L-99-1409 and of appellant's fifth assignment of error. Accordingly, appellant's appeals challenge aspects of the trial court's judgments of July 22, 1999 and November 22, 1999, overruling his objections to the magistrate's decisions and adopting those decisions in their entirety.
In his first assignment of error, appellant challenges the trial court's dismissal of his March 29, 1996 motion to modify child support for lack of jurisdiction.
In the magistrate's decision of April 9, 1998, the magistrate made the following finding of fact:
 "2. The Defendant filed a motion to modify his child support on March 29, 1996. At the time of the filing, the Defendant's contract with St. Charles Hospital remained in effect. The prior judgment entry precluded the modification on child support during the term of the St. Charles Hospital contract. The motion of the Defendant was improper and was dismissed."
Then, in her conclusions of law, the magistrate stated:
 "The Defendant initially filed a motion to modify support in March, 1996. The prior order of the court precluded modification of child support prior to the termination of the defendant's contract with St. Charles Hospital. The court did not have jurisdiction to grant the relief requested until the condition precedent occurred. The Defendant's Motion is Dismissed."
In his objections to the magistrate's report, appellant challenged this finding and conclusion. In ruling on the objections, the trial court held that because the St. Charles Hospital contract had not expired as of March 29, 1996, appellant's motion to modify was premature and was properly dismissed by the magistrate.
In our view, the trial court did not err in dismissing the March 29, 1996 motion to modify. The court did, however, misuse the term jurisdiction, which refers to a court's authority "to hear and determine a judicial proceeding." Black's Law Dictionary (5 Ed.Rev. 1979) 766. It is well-established that "a court retains continuing jurisdiction over its orders concerning the custody, care, and support of children, even when the court's initial order was based on an agreement by the parents of the child." Singer v. Dickinson (1992), 63 Ohio St.3d 408, 413. Accordingly, the court had "jurisdiction" to entertain the March 1996 motion to modify child support. Nevertheless, in dismissing the motion as it did, the court simply enforced the terms of its prior order, to which the parties themselves had agreed. That order provided that the terms of the child support payments would not be subject to modification during the term of appellant's contract with St. Charles Hospital. The record is clear. As of March 29, 1996, appellant's contract with St. Charles Hospital was still in effect. Accordingly, the trial court did not err in dismissing the March 29, 1996 motion to modify child support and the first assignment of error is not well-taken.
In his second assignment of error appellant contends that the trial court abused its discretion in dismissing his September 1996 motion to modify child support for failure to file the appropriate schedules.
The lower court dismissed appellant's September 1996 motion to modify for appellant's failure to comply with Loc.R. 7.05 of the Court of Common Pleas of Lucas County, Domestic Relations Division. That rule reads:
 "The following documents shall be filed with any motion to modify or establish child support and/or modify spousal support: Schedule I, Disclosure; Schedule V, Expenses; the preceding year's W-2 or 1040; and a statement from the party's employer or all wages received in the preceding six (6) months.
 "A motion to modify the prior order for the allocation of parental rights and responsibilities shall be accompanied by the filing of a completed Schedule II, UCCJA AFFIDAVIT.
 "Failure to complete and file these documents may result in dismissal. Failure to file the Schedule II, when required by statute or local rule, shall result in the dismissal of the motion. The opposing party shall deliver copies of his or her completed schedules and the above income information to the moving party and to the Court prior to the commencement of the hearing."
Accordingly, under Loc.R. 7.05, a domestic relations court has the discretionary authority to dismiss a motion to modify child support if the movant fails to file the appropriate schedules. In exercising her discretion, the magistrate reached the following conclusion of law with regard to this issue:
 "In September, 1996, the Defendant again filed a Motion to Modify the Child Support obligation. At the time of the filing of his motion, the Defendant failed to file Schedules I and V. The Defendant and his counsel were present at various subsequent pre-trials and filed multiple pre-trial discovery motions. The Defendant requested various income information from the Plaintiff, and in fact, argued that the Plaintiff had not completed the required court schedules, thus precluding the Defendant from properly preparing for trial.
"* * *
 "The Defendant's counsel had knowledge of the Local Rule. Further it must be assumed that the Defendant was also aware of the filing requirements because he not only acknowledged that he was familiar with the pleadings being filed in the case, but also attempted to have himself named as `co-counsel pro se'. At no time during the lengthy pre-trial proceedings did the Defendant file financial or expense information as required by Local Rule. The purpose of the rule is to facilitate the efficient administration of justice by providing each side a basis for negotiation and discovery. The Defendant offered no explanation as to his disregard of the requirements of filing other than the court should have told him to comply with the rule at some point in the pre-trial process. His argument is specious in that it is nothing more than an attempt to deflect the Defendant's responsibility to correctly prepare and present his case onto the court."
This conclusion is supported by the record and we can find no basis for concluding that the court's ruling dismissing the motion to modify amounted to an abuse of discretion. Moreover, we note that immediately after the March 11, 1998 hearing, when appellant was informed that his September 1996 motion to modify was dismissed, he filed a third motion to modify child support. That motion was accompanied by the appropriate schedules and the court ultimately ruled on the merits of the motion. Accordingly, any error that the court may have demonstrated in dismissing the September 1996 motion to modify was harmless in that the court eventually reviewed the motion. The second assignment of error is therefore not well-taken.
In his third assignment of error, appellant asserts that the trial court erred in proceeding only on appellee's motion to show cause and in then finding appellant in contempt of court.
In her decision of April 9, 1998, the lower court magistrate found appellant in contempt of court for his failure to pay child support totaling $115,335.78, failure to reimburse appellee for medical expenses of $4,317.89, and failure to pay outstanding medical bills of $1,319.59. The court then sentenced appellant to thirty days in the Lucas County Correctional Center but held that appellant could purge himself of the contempt by paying the amounts due within ten days of the date of the magistrate's decision. Upon appellant's objections, the trial court approved the magistrate's decision without modifications.
This court will not reverse the decision of a lower court in a contempt proceeding absent a showing of an abuse of discretion, State ex rel.Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11, unless the court's attitude in reaching its decision is found to be arbitrary, unreasonable or unconscionable, Steiner v. Custer (1940), 137 Ohio St. 448, paragraph two of the syllabus. In Ohio, the General Assembly has expressly granted courts the authority to hold a support obligor in contempt for failure to pay support. R.C. 2705.031(B)(1) provides that any party who has a legal claim to child support may initiate a civil contempt action for failure to pay such child support. Judicial sanctions may be employed to coerce a defendant into compliance with a court order. Cincinnati v. CincinnatiDist. Council 51 (1973), 35 Ohio St.2d 197, 206, certiorari denied (1974), 415 U.S. 994.
In determining whether the court abused its discretion through a finding of contempt and the imposition of a contempt sanction, we must first determine whether the contempt was civil or criminal. Clevelandv. Ramsey (1988), 56 Ohio App.3d 108, 110.
 "Offenses against the dignity or process of the court, where the primary purpose of the punishment imposed is to vindicate the authority of the court by punishing the contemnor for his disobediance [sic], are criminal contempts. Violations which are primarily offenses against the party for whose benefit the order was made, and where the primary purpose of the punishment is remedial or coercive and for the benefit of the complainant, are civil contempts, and the sanction must afford the contemnor the opportunity to purge himself of his contempt." Tucker v. Tucker (1983), 10 Ohio App.3d 251, 252.
Moreover, in determining the rights afforded an alleged contemnor, we must determine whether the alleged contempt was direct or indirect. In that vein, R.C. 2705.02 defines acts of indirect contempt and provides in relevant part:
 "A person guilty of any of the following acts may be punished as for a contempt:
 "(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer[.]"
In the present case, the court found that appellant had failed to pay court ordered child support and medical expenses and gave appellant ten days to comply with the order. Accordingly, the court found appellant guilty of an indirect civil contempt. This finding was supported by clear and convincing evidence. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253. Appellant admitted that when his contract with St. Charles Hospital expired in September 1996, he unilaterally reduced his child support payments. With regard to the medical bills, appellant testified that appellee had never submitted the bills to him for payment. Appellee, however, testified that she had provided him with the bills. The court chose to believe appellee.
Accordingly, we cannot say that the trial court abused its discretion in proceeding with the hearing on appellee's motion to show cause or in finding appellant in contempt of court for failing to abide by the court's prior decree. The third assignment of error is therefore not well-taken.
Appellant's fourth assignment of error challenges the trial court's decision to award appellee attorney fees. Appellant contends that the award was in error because the court never determined that the fees were reasonable and there was no evidence presented as to what portion of the fees related to the motion to show cause.
In her decision of April 9, 1998, the magistrate below awarded appellee attorney fees of $2,483.20 for her prior counsel, John Straub, and attorney fees of $6,487.50 for her counsel at that time, Martin Mohler. In reaching this conclusion, the magistrate made a factual finding that appellee had "incurred fees and cost [sic] for Mr. Straub's representation of her in the Motion to Show Cause in the amount of $2,483.20." She then further found that "Mr. Mohler's attorney fees are $6,487.50." These findings were based on evidence that was submitted at the March 11, 1998 hearing consisting of fee statements from attorneys Straub and Mohler. Attorney Straub's fee statement covers his representation of appellee from June 1995, until August 1997. During the hearing, appellant's counsel questioned appellee about these fees and about which services dealt with the motion to show cause. It is impossible to tell from the transcript of that hearing to which services counsel's questions refer. Nevertheless, counsel was given assurances by the court that the only attorney fees at issue were those relating to the motion to show cause. With regard to attorney Mohler's fees, the statement he submitted reads that his fee of $6,487.50 covers "All matters pertinent to DR94-0945, commencing September 19, 1997, to date, including, but not limited to, legal research, correspondence, telephone conferences, pre-trial conference of November 19, 1997, preparation of trial brief, office conference of March 10, 1998, and trial of March 11, 1998." Those dates are consistent with actions taken on appellee's motion to show cause. Upon appellant's objection to the award of these fees, the trial court held that the attorney fees submitted by appellee were reasonable and therefore adopted the magistrate's decision to award such fees without modification.
R.C. 3109.05(C) provides:
 "If any person required to pay child support * * * is found in contempt of court for failure to make support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall
assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt* * * ." (Emphasis added.)
Accordingly, in a post-divorce contempt of court proceeding, an award of reasonable attorney fees to the party filing the successful contempt action are mandated. Contrary to appellant's assertion, the court below did find that the subject fees were reasonable. Absent a showing of an abuse of discretion, this court will not reverse a trial court's award of attorney fees in a post-divorce action. Parzynski v. Parzynski (1992),85 Ohio App.3d 423, 439, appeal dismissed (1993), 67 Ohio St.3d 1450. Given the record before us, we cannot say that the trial court's award of attorney fees amounted to an abuse of discretion. Accordingly, the fourth assignment of error is not well-taken.
Appellant's fifth assignment of error challenges the trial court's ruling on his third motion to modify child support. That motion was submitted to the court on the parties' stipulations. Appellant argues that because the motion was submitted on stipulations, the court erred in ignoring those stipulations and in relying on evidence submitted at the March 11, 1998 hearing to rule on the motion to modify. Specifically, appellant challenges the court's findings regarding his unemployment, his income and his potential income.
The parties' joint stipulations included the following:
 "10. That the Plaintiff, Jean M. Boraggina, and the Defendant, Nicholas V. Boraggina, are both presently unemployed.
"* * *
 "13. That the Defendant, Nicholas V. Boraggina, pursuant to his form 1040 U.S. Individual Income Tax Return, had income for 1997 as follows: Taxable Interest of $6240.00 [sic], Dividend Income of $21,888.00, a non-recurring taxable Ohio State Income Tax Refund of $21,211.00, and a non-recurring Capital Gain of $73,846.00* * * .
"* * *
 "15. That, as of November 17, 1998, the Defendant, Nicholas V. Boraggina, has received/earned year-to-date income from interest and dividend [sic] in the amount of $20,872.00* * * .
"* * *
 "19. That, as of August 31, 1998, the Defendant, Nicholas V. Boraggina, had monies in a Revocable Trust, through Reliance Financial Services, in the amount of $723,433.22* * * .
 "20. That, as of August 31, 1998, the Defendant, Nicholas V. Boraggina, had an IRA account, through Reliance Financial Services, with an approximate value of $495,357.27* * * .
"* * *
 "24. That the Emergency Center Agreement between St. Charles Hospital and Oregon Medical Services, Inc., under date of November 3, 1993, under which the Defendant, Nicholas V. Boraggina, was previously employed has been terminated* * * .
 "25. That, since the termination of the Agreement for employment as set forth above, the Defendant, Nicholas V. Boraggina, has applied for various emergency room and physician management positions* * * ." (Emphasis in original.)
The stipulations further referred to depositions, which had been filed with the court, of various witnesses who testified regarding appellant's previous and future employability.
In the magistrate's decision of July 22, 1999, the court recognized that the motion to modify was submitted to the court upon the parties stipulations, but then made further findings. It is these further findings to which appellant objects.
Upon appellant's filing of the motion to modify child support, the trial court was obligated to recalculate appellant's child support obligation pursuant to the basic child support schedule. R.C.3113.215(B)(4). In making this calculation, the court was required to consider numerous forms of income and other factors. Id. In Willis v.Willis (May 22, 1997), Cuyahoga App. No. 70937, unreported, the parties submitted a motion for change of custody to the court on stipulations. In ruling on that motion, the trial court considered matters contained in the court record but which were outside the confines of the parties' stipulations. The appellate court held that "any court has the inherent power to review matters properly contained in the file of a pending case," and that parties cannot, by stipulation, "interfere with the court's discharge of its duty to consider the best interest of the child in rendering its judgment." We find this decision to be equally applicable in the context of a motion to modify child support. That is, in our view, parties cannot, by stipulation, limit a court's consideration of evidence regarding their incomes, particularly where those stipulations provide an incomplete picture of the parties' financial situation.
In the present case, the parties' stipulations did not provide the court with a complete picture of the parties' financial situation. Accordingly, the trial court was well within its authority to review the entire record before it in ruling on the motion to modify child support. That record contained evidence submitted at the March 11, 1998, hearing at which both parties testified and were subject to cross-examination. The fifth assignment of error is therefore not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Court costs of this appeal are assessed to appellant.
 __________________________ Mark L. Pietrykowski, P.J.
Richard W. Knepper, J., George M. Glasser, J. CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.